IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>QUANTEZ RASHAUN GRIFFIN,<br><br>    Defendant. | CRIMINAL ACTION NO.<br><br>1:20-CR-00205-SCJ-JEM |

### UNITED STATES MAGISTRATE JUDGE'S
### NON-FINAL REPORT AND RECOMMENDATION

This criminal case is before the Court on Defendant Quantez Rashaun Griffin's motion to suppress, (Doc. 22). For the reasons that follow, I **RECOMMEND** that Defendant's motion be **DENIED**.

### PROCEDURAL BACKGROUND

On June 9, 2020, a federal grand jury sitting in the Northern District of Georgia returned an indictment charging Defendant with two counts of possessing a firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e). (Doc. 1). On July 28, 2020, Defendant filed a motion to suppress evidence. (Doc. 22). The undersigned held an evidentiary hearing on Defendant's motion on July 29, 2022, after which Defendant filed a post-hearing brief on October 20, 2022, (Doc. 97), and the government responded on November 18, 2022, (Doc. 99). The deadline for Defendant to file a reply brief has passed, (Doc. 82; Doc. 92 at 69), and the matter is now ripe for review.

### FACTS

Two Cobb County police officers testified at the evidentiary hearing: Sergeant Cooper and Officer Walker. (Doc. 92). Both officers are assigned to the

1

Cobb County Police Department's VIPER Unit, which stands for "Violent Incident Prevention Early Response" and is described as a "crime suppression unit." (*Id.* at 6).

On August 9, 2019, Officer Walker was sitting in a gas station parking lot when he saw someone who he believed to be Greg Spurlock, an individual wanted by law enforcement.[1] (*Id.* at 42). Officer Walker testified that he radioed law enforcement, stating, "I think I've got Greg Spurlock down here," and, "I don't have probable cause to stop the vehicle right now." (*Id.* at 45). Officer Walker also radioed a description of the car. (*Id.*).

Sergeant Cooper was located near Officer Walker and was able to pull behind the car. (*Id.* at 42). When he did so, Sergeant Cooper saw that the vehicle's two front tires went beyond the balk line at a traffic sign. (*Id.* at 9). Sergeant Cooper continued behind the car, and saw it make a second traffic stop beyond the balk line. (*Id.*). Sergeant Cooper explained that a balk line is the "big white line that's at pretty much every intersection where there's a traffic light or a stop sign. You're supposed to stop behind the white balk line instead of in front of it." (*Id.* at 7). In this case, "the vehicle failed to stop at two separate intersections properly," and at "[b]oth intersections[,] the front two tires were ahead of the white balk line." (*Id.*). Sergeant Cooper further testified that stopping past a balk line constitutes a traffic violation under Georgia law. (*Id.* at 7-8).

After witnessing the second balk line violation, Sergeant Cooper turned his lights on to initiate a traffic stop. (*Id.* at 9, 53). Defendant's car "kept rolling for a

---

[1] Officer Walker testified that he knows Spurlock because he has arrested Spurlock "multiple times," and that both Spurlock and Defendant have numerous face tattoos. (*Id.* at 43).

2

little while at a slow pace," so Sergeant Cooper pulled in front of it. (*Id.* at 10, 53). In the meantime, Officer Walker caught up to Sergeant Cooper and saw the second balk line traffic violation. (*Id.* at 35, 42). When Sergeant Cooper pulled in front of the car, Officer Walker pulled behind it, blocking the car in. (*Id.* at 42, 53).

Sergeant Cooper and Officer Walker both approached the vehicle. (*Id.* at 10, 36). Defendant was driving the car, and passengers sat in the front and back seats. (*Id.* at 10-11). Both officers smelled the odor of marijuana coming from inside the car, and Defendant and the passengers admitted to having just recently smoked marijuana. (*Id.* at 11, 36). After smelling marijuana, the officers told Defendant and the others that they were going to search the car. (*Id.* at 11). During the search, Sergeant Cooper found a "fanny pack looking bag" on the driver's side of the car, inside of which was crack cocaine and a gun. (*Id.* at 12).

On cross-examination, defense counsel tendered the warrant for Defendant's arrest. The warrant lists Defendant's arrest violation as one for improper "slowing down and stopping and turning" under O.C.G.A. § 40-6-123(c). (*Id.* at 16-18; Def. Ex. 1); *see also* O.C.G.A. § 40-6-123(c) (prohibiting improper turning). Counsel questioned why the arrest warrant reported a different statute than the one officers testified Defendant had violated: a balk line violation. (*Id.* at 16-18, 37-38). Officer Walker, who swore out the arrest warrant, explained that the computer system he used to complete the warrant required him to pick the violated statute from a list of pre-set Georgia statutory codes; none of those code sections, however, was for a balk line violation. (*Id.* at 38). Officer Walker thus chose the statute on the drop-down template that most closely resembled a balk line violation — the statute prohibiting improper

3

turning. (*Id.*)("This was the closest I had to the 'pulling past the balk line.'"). Sergeant Cooper testified that the arrest warrant's factual description of Defendant's violation provides that, "The vehicle was stopped in the roadway past the balk line almost into the lane of travel." (*Id.* at 27).

Also on cross-examination, defense counsel questioned both officers regarding Spurlock. While Officer Walker testified that he radioed law enforcement about Spurlock, Sergeant Cooper testified that he couldn't recall any mention of that name. (*Id.* at 19)(Officer Walker testifying he radioed that the car leaving the gas station "might be Spurlock"); (*id.* at 47)(Sergeant Cooper, when asked, "[w]as the car alerted to you in any manner by Officer Walker?," replying, "Not that I recall."). In addition, Officer Walker admitted that, during the probable cause hearing in Cobb County on Defendant's arrest, he did not mention Spurlock, and further admitted that he did not mention Spurlock in the warrant he swore out supporting Defendant's arrest or in the supplemental police report he completed. (*Id.* at 47-48, 50, 56-58).

## DISCUSSION

Defendant seeks to suppress the firearm that was seized during the search of his car, arguing that no probable cause supported the traffic stop.[2] (Doc. 22). In support, Defendant puts forth two arguments. First, Defendant asserts that no probable cause supported the traffic stop because the arrest warrant provided that Defendant had violated O.C.G.A. § 40-6-123(c) — the Georgia statute prohibiting improper turning — while the officers' testimony was that they pulled Defendant's car over for failing to stop at the balk line. (Doc. 97). The

---

[2] Defendant does not argue that the search of the car, after it was pulled over, was unlawful.

government responds that the statutory citation listed on the arrest warrant is irrelevant to whether officers possessed probable cause to initiate the stop. (Doc. 99 at 5). The Court agrees with the government.

The relevant inquiry is whether officers possessed probable cause to believe that Defendant committed a traffic violation before initiating the traffic stop. The record shows that they did. Both officers testified consistently: Sergeant Cooper testified that "the vehicle failed to stop at two separate intersections properly," and at "[b]oth intersections[,] the front two tires were ahead of the white balk line," (Doc. 92 at 7), while Officer Walker said that the vehicle was pulled over "[f]or stopping past the balk line." (*Id.* at 35).

Defendant cites *United States v. Chanthasouxat*, 342 F.3d 1271 (11th Cir. 2003), to argue that an officer's mistake of law cannot provide probable cause to justify a stop. (Doc. 97 at 10). But no "mistake of law" happened here. A mistake of law is where an officer observes facts that he or she mistakenly believes violate the law. *Chanthasouxat*, 342 F.3d at 1277-78. As testified to by both officers, Defendant's actions here violated the Georgia law prohibiting drivers from stopping past the stop line. *See* O.C.G.A. § 40-6-72 (providing that drivers who approach a stop sign must stop at a clearly marked stop line if there is one); (Doc. 92 at 7-8). And Defendant himself does not dispute this. Officer Walker explained that the reason the arrest warrant did not specifically cite the balk-line violation statute was because that particular statute was not an option for him to choose from the pre-set, drop-down template. (Doc. 92 at 38). The warrant, though, describes the facts underlying Defendant's traffic stop exactly as the officers testified: for stopping past the balk line.

Second, Defendant argues that the officers are not credible and thus this Court should reject their testimony that they observed a traffic violation before initiating the traffic stop. (Doc. 97 at 11)("Because the officers' testimony was not credible, Defendant asserts that there was no probable cause to justify his stop . . . ."). Specifically, Defendant claims that the officers' credibility was undercut when they testified differently regarding Spurlock — that is, Officer Walker testified that he believed the driver to be Spurlock and communicated that fact to Sergeant Cooper, while Cooper testified that he could not recall any mention of Spurlock before he stopped Defendant's car. (Doc. 97 at 12). Defendant further attacks Officer Walker's credibility, emphasizing that Walker never mentioned Spurlock at the previous Cobb County probable cause hearing after Defendant's traffic stop. (*Id.* at 13). Notably, as the government points out, Sergeant Cooper never denied talking to Officer Walker about Spurlock; instead, he testified only that he could not recall any such communications. (Doc. 92 at 47; Doc. 99 at 8). With respect to Officer Walker's prior testimony in Cobb County immediately following the traffic stop, the officer was not asked about Spurlock at that hearing. (Doc. 99 at 9). Regardless, there was no need for Officer Walker to mention Spurlock in Cobb County because, by then, the officer knew that the car's driver was not Spurlock. Thus, Spurlock was irrelevant to the charges pending against Defendant at the Cobb County probable cause hearing. (*See* Doc. 99 at 9). It is thus no surprise that Officer Walker failed to mention Spurlock.

After hearing from, and observing, both officers at the evidentiary hearing, this Court credits their testimony. Because they saw Defendant improperly stop

his car beyond the balk line in violation of Georgia law, they had probable cause to initiate the traffic stop. As such, Defendant's argument fails.

## CONCLUSION

For the reasons explained above, it is **RECOMMENDED** that Defendant's motion to suppress, (Doc. 22), be **DENIED**.

There are no pending matters before the Magistrate Judge, and the undersigned is aware of no problems relating to the scheduling of this case. **IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, certified Ready for Trial.

**IT IS SO ORDERED** and **RECOMMENDED**, this 19th day of December, 2022.

_____
J. ELIZABETH McBATH
UNITED STATES MAGISTRATE JUDGE